## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONALD AND ERIN SCHULTZ,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION NO 1:09-00055-KD-C** |
| | ) | |
| **SOUTHEAST SUPPLY HEADER, LLC,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

### ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Docs. 13, 14), Plaintiff's Response in opposition (Docs. 17, 18) and Defendants' Reply thereto (Docs. 20, 21); Defendant's Motion to Strike Affidavit of Donald Schultz (Doc. 22). The Magistrate Judge's Report and Recommendation (Doc. 25) regarding Defendant's Motion to Dismiss and/or Strike (Docs. 4, 5), to which Objection has been filed (Doc. 29), is also pending. For the reasons set forth herein, Defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED**, and Defendant's Motion to Strike Affidavit of Donald Schultz (Doc. 22) and Motion to Dismiss and/or Strike (Docs. 4, 25) are **DENIED as moot**. Further, the Clerk of Court is ordered to **TERMINATE as moot** the Magistrate Judge's Report and Recommendation (Doc. 25).

### I. Background

Plaintiffs Donald and Erin Schultz ("the Schultzes"), who are citizens of Alabama, instituted this suit, which includes claims for negligence, trespass, nuisance, and inverse condemnation. (Doc. 1). Diversity jurisdiction obtains pursuant to 28 U.S.C. § 1331 (Docs. 1, 6, 33), and the parties do not dispute that Alabama law governs the substance of this dispute. (See Docs. 14, 17).

**A.    The Parties**

Plaintiffs own approximately forty (40) acres in Irvington, Alabama, as well as a "homeplace and appurtenant structures and improvements" built thereon.  (Doc. 1).

Defendant Southeast Supply Header ("SESH") is a Delaware limited liability corporation consisting of two members: CenterPoint Energy Gas Transmission, Inc.,  a Delaware corporation with its principal place of business in Texas (Docs. 6, 35), and Spectra Energy Transmission, LLC, a Delaware limited liability company.  (Doc. 6).  Spectra Energy Transmission, in turn, is wholly owned by Spectra Energy Corp, a Delaware corporation.  (Doc. 33).

In early 2008, Defendant negotiated with Plaintiffs to acquire an easement that included a fifty-foot wide permanent right-of-way and an additional temporary workspace easement.  (Docs. 1, 14).  Defendant planned to install a long-haul natural gas pipeline running from northeastern Louisiana into southern Mobile County, Alabama.  (Id.)  After Defendant succeeded in purchasing the easement from Plaintiffs, it installed the natural gas pipeline across Plaintiffs' property.  (Id.)

**B.    Claims**

Plaintiffs contend Defendant damaged their 40-acre Irvington property in the course of installing pipeline to the northwest of the property, "during which time the Defendant SESH stripped the land northwest of [Plainitffs'] property . . . of natural vegetation and placed wood matting so as to walk equipment to the project site and during the course of stripping the land to the northwest removed vegetation and trees that would otherwise scatter and absorb rainwater and the flow of stormwater."  (Doc. 1, ¶¶ 1, 3).  Plaintiffs further allege that, "in addition to creating [this] swale of open land to the northwest of Plaintiffs, which property was otherwise previously vegetated and wooded," Defendant "breached the bank of Fowl River Tributary No. 3 and on or about August 15,

2008 moved the matting for the area northwest of [Plaintiffs'] property . . . extending from Cook Avenue to Fowl River Tributary No. 3 causing waters flowing through Fowl River Tributary to be directed onto [Plaintiffs'] property . . . ."  (Id. ¶ 4).  Plaintiffs claim that as a result of Defendant's "removal of the matting," Plaintiffs' property was "inundated and converted into a holding pond for the Defendant's easement stormwater runoff" when it rained.  (Id. ¶ 5).

Plaintiffs further claim that on August 20, 2008, Plaintiff Donald Schultz informed the Defendant's representatives that:

> due to the breaching of the creek bank, which was a navigable water known as Fowl River Tributary No. 3, and the removal of the wooden matting or the staging area for construction on the Defendant's easement, and the removal by the Defendant of vegetation and wooded areas from the Defendant's easement, the easement was acting as a conduit or channel for waters from the Fowl River Tributary No. 3 and stormwater onto [Plaintiffs' ] properties . . . inundating the unimproved property of the Plaintiffs as well as silting a pond constructed on [Plaintiffs'] property and causing the septic tank system around [Plaintiffs'] homeplace . . . to malfunction resulting in effluent from the septic tank system and tank to be deposited on the surface.

(Id. ¶ 6).  According to Plaintiffs, after receiving this notice Defendant took no action to alleviate the stormwater runoff and flooding that allegedly occurred as a result of the pipeline construction until October, 2008, after Plaintiffs retained counsel in connection with this dispute.  (Id. ¶¶ 7-8)

Plaintiffs further allege that, as a result of the foregoing, Plaintiffs' property has been rendered unuseable and has essentially been reduced to a retention pool or holding pond for runoff from Defendant's construction site and has diminished in value as a result.  (Id. ¶¶ 10-11, 14, 17).  The Plaintiffs also claim that they have incurred physical pain and discomfort as well as severe inconvenience and mental anguish as a result of the foregoing.  (Id. ¶¶ 11, 14, 17, 20).  In addition, Plaintiffs make claims for punitive damages and costs.  (Id. ¶¶ 14, 17).

3

1.      **Negligence**

The first count of Plaintiff's complaint alleges that the above-described acts and omissions constitute negligence that proximately caused Plaintiffs' property (which includes a homeplace, pond, swimming pool, and septic tank system) to be flooded and rendered unuseable, and that the property has diminished in value as a result**.** (Id. ¶¶ 1-11)

2.      **Trespass**

In the second count of the Complaint, Plaintiffs claim that Defendant, after receiving notice, caused or allowed water, sedimentation, and construction debris to be diverted onto Plaintiffs' property, and that this constitutes a continuing trespass. (Id. ¶¶ 12-14)

3.      **Nuisance**

The third count of the Complaint alleges that Defendant's "continuing maintenance" of the "construction site . . . in its present condition" and the failure to remediate or alleviate the stormwater runoff resulting from the above-described activities constitutes a continuing nuisance. Plaintiffs claim that this alleged nuisance rendered the use and enjoyment of the Plaintiffs' homeplace and property impossible and proximately caused a threat to their health and safety due to the damage to their septic tank and field line. (Id. ¶¶ 15-17)

4.      **Inverse Condemnation**

In the final count, Plaintiffs claim that Defendant's "continuous conduct" as described above constitutes "a taking and . . . converting the same into a holding pool for the construction, debris, waters, and sedimentation directed and channelized from the Defendant's work site and easement to the Plaintiff's properties without compensation" in violation of Section 18-1(a) *et seq.*, specfically 18-1(a)-32 of the Alabama Code. (Id. ¶¶ 18-20) In connection with this count, Plaintiffs allege that

Defendant SESH has "condemning authority relative to the installation of the natural gas transmission pipeline."  (Id. ¶ 19).

C.    **Evidence**

1.    **Advance Damage Release**

In support of its motion for summary judgment, Defendant SESH submits a copy of an Advance Damage Release ("the Release") dated January 24, 2008.  (Doc. 13-2).  George Thomas Bartolazzi, who is employed by Defendant as an Engineering and Construction Right-of-Way Manager with custody over SESH's business records pertaining to the acquisition of easements and right-of-way associated with the company's pipeline, submitted an affidavit authenticating the Release.  (Doc. 13-2; Bartolazzi Aff.)

The Release bears Plaintiffs' signatures and indicates that Plaintiffs received $10,900.00 from Defendant "in full payment and settlement of all claims and damages of every kind whatsoever, present and future, to interests of the undersigned arising from or related to the surveying, preparation, laying and construction of a pipeline and appurtenances under, upon, and across the land described in" a "Grant of Easement/Servitude" that is also dated January 24, 2008.  (Doc. 13-2, Advance Damage Release).  The Release further provides that it "covers all damages to real or personal property and any and all other damages resulting from the construction of [SESH's] proposed pipeline and appurtenances, including but not limited to . . . Uneconomic Remnant 0.44 (acres)"—"$7,040.00"; "Timber"—"$500.00"; "Hay X 2 yrs."—"2,000.00"; and "10 loads of subsoil/21 yard per load"—"$1,360.00."

The Release also includes several covenants SESH made to the Schultzes.  Defendant agreed to:  "install and leave a culvert from production for access to the right-of-way"; "build a 4' field

5

fence and install a gate from the southwest corner of the property to the eastern most point of the right-of-way on the south property line"; "build a 4' field fence and install a gate from the southwest corner of the property to the northern most point of the right-of-way on the west property line"; and, specifically, to "install the gate in the right-of-way for access to the adjacent property."

### 2.    Grant of Easement

In support of their Opposition to Defendant's Motion for Summary Judgment, Plaintiffs furnish the Court with a copy of the Grant of Easement ("the Easement"), which Plaintiffs executed and which is referred to in the Release.  (Doc. 18-2, Exh. 3; Grant of Easement).  The Easement grants Defendant a right-of-way for, among other things "the purposes of constructing, laying, maintaining, operating, inspecting, altering, repairing, replacing, removing, reconstructing, [and] relocating" pipeline facilities "for the transportation of natural gas and all by-products thereof or any liquids, gases or substances which can be transported through pipelines."  (Id.)

The document recites that in exchange for $10.00 and other valuable consideration, Plaintiff conveys to Defendants a permanent right-of-way and easement "under, upon, over, and through Section 32, Township 6 South, Range 2 West, Mobile County, Alabama," "Lot 8, Block E, Pine Springs Farms."  The Easement also states that "[t]he lands included in and covered by this Grant of Easement shall include, in addition to the above[-]described lands, all land, if any, continguous[,] adjacent [. . .,] or adjoining" the specified land "upon which Defendant's pipeline facilities, right-of-way, and/or any Temporary Workspace are located."  (Id.)  The Easement also grants Defendant a 50-foot right-of-way extending 25 feet from the center line of the initial pipeline, and a preliminary drawing of the location for the right-of-way is attached to the Easement.  (Id.)

The Easement itself releases Defendant from two sets of claims: (1) those "resulting from

or arising out of any operations, activities, or omissions of [Defendant], its agents and employees in the construction, exercise or use of the right of way," except those resulting from Defendant's negligence; and (2) "all damages for the construction of the Pipeline Facilities, including any severance damages to [Plaintiffs'] Land, except . . . the fair market value, before or at the time of construction, for any and all damages to growing crops, cultivated land, pasturage, timber, fences, drain tile, or buildings." (<u>Id.</u>)  With respect to those types of damages excepted from the second category, the Easement contemplated that Defendant would pay Plaintiff "the fair market value" of such damages, "before or at the time of construction." (<u>Id.</u>)  "Upon receipt of such payment," Plaintiffs agreed in the Easement to "execute a release . . . for damages as provided . . . ." (<u>Id.</u>)

The Easement also includes Defendant's agreement to "clean up the right-of-way in a workmanlike manner and restore the premises consistent with the use and intended use of the servitude and considering reasonable ware and t[ear] under the circumstances."  However, the Easement further provided that Defendant's "obligation of restoration" did not extend "beyond that imposed at law and pursuant to applicable regulations . . . ." (<u>Id.</u>)  And the Easement also vests Defendant with the right

> to remove, clear, and to keep clear, at any time in Defendant's sole and absolute discretion and with no additional compensation to Grantor, all buildings, walls or similar structures, above or below ground swimming pools, decks, pipelines and conduits, septic systems, leach fields, wells, rocks, trees, brush limbs and any other structures or obstructions in or on the Right-of-Way which might interfere with the use of the Right-of-Way or the free and full right of ingress and egress; and to do any other lawful activities which are incidental to or helpful for the intended uses of the Right-of-Way set forth above.

(<u>Id.</u>)

### 3.    Donald Schultz's Affidavit

Plaintiff Donald Schultz submitted an affidavit in support of Plaintiffs' Opposition to the Motion for Summary Judgment, which, as noted above, Defendant has moved to strike. As explained below in greater detail, this motion to strike is due to be granted in part and denied as moot in all other respects.

**II.   Analysis**

**A.   Motion to Strike Schultz Affidavit**

Federal Rule of Civil Procedure 56(e)(1) dictates that an affidavit filed in opposition to a motion for summary judgment must "set out facts that would be admissible in evidence." In its Motion to Strike Donald Schultz's affidavit, Defendant argues, among other things, that the Court should strike—as inadmissible parol evidence—Mr. Schultz's statement that he did not intend to release Defendant from liability "for any damages other than damages related to [SESH's] specific construction activities as called for in the Advance Damage Release related to and described in the Grant of Easement which is across the corner of [his] property." (Doc. 18-2, Exh. 1; Schultz Aff.).

The Alabama Code provides that "[a]ll receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, and all judgments entered pursuant to pro tanto settlements, must have effect according to their terms and the intentions of the parties thereto." ALA. CODE § 12-21-109. When the terms of a release are unambiguous, Alabama courts discern the parties' intentions solely by examining the document; they will not consider extrinsic evidence:

> It is a well settled statement of law that 'in the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach or vary its terms.'
> ***
> 'The construction of a written document is a function of the court. If

> the document is unambiguous, its construction and legal effect are a question of law which may be decided under appropriate circumstances, by summary judgment.'

Boggan v. Waste Away Group, Inc., 585 So.2d 1357, 1359–60 (Ala. 1991)(citing Jehle-Slauson Const. Co., 435 So.2d 716, 719-720 (Ala. 1983)); see also Conley v. Harry J. Welchel Co., 410 So.2d 14 (Ala.1982).   Affidavits concerning the parties' intentions in entering into the release are not admissible for the purposes of interpreting or applying the terms of an unambiguous release.  Nix v. Henry C. Beck Co., 572 So.2d 1214 (Ala. 1990) (an affidavit containing parole evidence regarding the parties' intent in entering into a release was "an attempt to vary the unambiguous terms of the release and was therefore not admissible"); Alabama Power Co. v. Blount Bros. Corp., 445 So. 2d 250, 251–53 (Ala. 1983) (affirming trial court's exclusion of affidavits asserting that it was not the plaintiff's intention, when it signed a release of "any claim, demand or demands, damages, action or actions, cause or causes of action . . . involving in any way" the defendant's construction of Walter Bouldin Dam, to release the defendant from future claims regarding its work on the dam).

The Release Plaintiffs signed relieves Defendant from liability for "all claims and damages of every kind whatsoever, present and future . . . arising from or related to . . . surveying, prepara[ing], laying and constructi[ng . . .] a pipeline and appurtenances under, upon, and across the land described in the Grant of Easement . . . ," as well as "any and all other damages resulting from the construction of [SESH's] proposed pipeline and its appurtenances . . . ."  As explained in greater detail below, the terms of that Release unambiguously include the claims that form the substance of this dispute.  As such, this Court will not consider Donald Schultz's parol testimony regarding his intentions in entering into the Release.   That document, by its terms, unambiguously frees

Defendant from liability for construction activities related to or arising from the pipeline laid across Plaintiffs' land.  Plaintiff's testimony reflecting a contrary understanding is not admissible for the purpose of varying or impeaching the clear terms of the Release.

Because Plaintiffs' claims are barred by the Release, the remainder of Mr. Schultz's affidavit is rendered irrelevant.  Accordingly, Defendant's Motion to Strike the Schultz Affidavit is due to be **GRANTED in part**, to the extent it seeks to introduce parol evidence regarding Mr. Schultz's intentions in entering into the release.  The Motion to Strike the Schultz Affidavit is due to be **DENIED as moot** in all other respects.

**B.      Motion for Summary Judgment**

Summary judgment should be granted only if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).[1]  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment also always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317,

---

[1]  Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

FED. R. CIV. P. 56 (c).

323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).  The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment.  Lofton v. Secretary of Dep't of Children & Family Serv., 358 F.3d 804, 809 (11th Cir. 2004), cert. den., 534 U.S. 1081 (2005).

Defendant is entitled to summary judgment because the Release Plaintiffs signed unambiguously included "all" "present and future" damages resulting from the construction of SESH's natural gas pipeline across Plaintiffs' land.

Plainitffs' Opposition casts their allegations as follows:

> The Complaint in this cause alleges that SESH, subsequent to the acquisition of an easement across the properties of Donald and Erin Schultz, proceeded to the northwest of [Plaintiffs'] properties . . . [,] acquired easement [*sic*] [,] and in the course of that acquisition and installation of the pipeline caused land to the northwest to be stripped, vegetation to be removed and a creek bank to be breached. The conduct caused waters and sedimentation to be diverted onto the properties of Donald and Erin Schultz.

(Doc. 18-2, Exh. 5; Pls' Opp. Br.).  Having so described their claims, Plaintiffs go on to argue that the Release does not bar their claims against Defendant because:  "that release and easement pertain[] to only the area of the easement on the Schultz property and ha[ve] nothing to do with

11

conduct subsequent to the date of the release on properties outside the area of the Schultz property." (Id.)

As cited above, Plaintiffs contend in the Opposition that their damages were not caused by Defendant's activities respecting "the area of the easement on the Schultz property." (Id.)  Instead, Plaintiffs insist that their land was flooded because SESH stripped land, removed vegetation, and breached a creek bank to the northwest of their property.  (Id.)  Although Plaintiffs' unamended Complaint does include such claims, it also incorporates an allegation that the Plaintiff's property was "inundated and converted into a holding pond for the Defendant's easement stormwater runoff" as a result of "the removal of the wooden matting or the staging area for construction on the Defendant's easement, and the removal by the Defendant of vegetation and wooded areas from the Defendant's easement," which caused "the easement [to . . . ] act[] as a conduit or channel for waters from the Fowl River Tributary No. 3 and stormwater " (Doc. 1, ¶¶ 5-6).  The most straightforward understanding of the phrases "Defendant's easement" and "the easement"[2] found in these allegations is that it refers to the easement Defendant acquired from Plaintiff.  That Easement includes not only the section, township, range, lot, and block specified in that document, but also "all land, if any, continguous[,] adjacent [. . .,] or adjoining" the specified land "upon which Defendant's pipeline facilities, right-of-way, and/or any Temporary Workspace are located." (Doc. 18-2, Exh. 3; Grant of Easement).  The Release clearly relieves Defendant from liability "arising from or related to the surveying, preparation, laying and construction of a pipeline and appurtenances under, upon, and across the land described in" the Easement.  Accordingly, Plaintiffs' claims that Defendant's

---

[2]The Complaint also mentions that Defendant "acquired additional easements to the northwest of Plaintiffs' property." (Doc. 1 ¶2)

construction activities caused the Easement to operate as a conduit for flood and stormwater are therefore barred by the Release.

Even if this Court were to find that the question of whether the flooding could have occurred solely as the result of Defendant's activities on other properties presents a genuine issue of material fact, Defendants would still not be liable for Plaintiffs' damages. Such flooding damages, though allegedly caused by SESH's pipeline construction activities on neighboring properties, would nonetheless "relate[] to" the laying and construction of the pipeline on Plaintiffs' land. (Doc. 13-2). A pipeline is built to function as a unit, and this particular pipeline was erected to connect Plaintiffs' property with those adjacent to it to the northwest. Construction work on an adjacent portion of pipeline is clearly related to Defendant's construction activities on the Easement it acquired from Plaintiffs. Moreover, in addition to covering damages "related to" the laying of a pipeline on Plaintiffs' land, the Release also explicitly and without qualification "covers *all* damages to real or personal property and any and *all* other damages resulting from the construction of [SESH's] proposed pipeline and appurtenances." Id. (emphasis added). This clause contains no geographic limitation whatsoever—"any and all" damages resulting from the construction of Defendant's proposed natural gas pipeline are unambiguously included within the Release. See Regional Health Servs., Inc. v. Hale County Hosp., 565 So. 2d 109, 111 (Ala. 1990) ("In order to determine whether the language of [a] release [is] unambiguous," the court "must give the words their ordinary meaning."). As the Alabama Supreme Court has previously noted, "'all' is all. 'All' is not ambiguous. 'All' is not vague. 'All' is not of doubtful meaning." NCNB Texas Nat. Bank, N.A. v. West, 631 So.2d 212, 222 (Ala..1993) (interpreting the term "all" in a deed conveying mineral rights) (citing Turner v. Lassiter, 484 So.2d 378, 380 (Ala. 1985)). Whether the damages resulted

from pipeline construction activities on Plaintiffs' property or on adjacent property, the Plaintiffs insist that the flooding was caused as a result of Defendant's pipeline construction activities. Accordingly, their claims squarely fall within the four corners of the Release and are foreclosed by it.

In support of their claims, Plaintiffs cite Foreman v. State, 676 So. 2d 303 (Ala. 1995), overruled on other grounds, Willis v. Univ. of North Alabama, 826 So.2d 118 (Ala. 2008)).  In that case, the defendants bought two thousandths of an acre of property that Foreman owned and lived upon for the purposes of constructing an interstate highway shoulder across the corner of Foreman's yard.  Foreman sued, alleging that the construction produced loud noise, caused her utilities to be cut off at times, occurred at unreasonable hours, and caused damage to her house.  The defendants moved for summary judgment, basing their motion in part on a release executed by Foreman in conjunction with the conveyance.  Alabama's Supreme Court held that summary judgment could not be had on the basis of the release, which stated:

> [Foreman] . . . agree[s] that the purchase price above-stated is in full compensation to [her] . . . and hereby releases the State of Alabama and all of its employees and officers from any and all damages to [her] remaining property . . . arising out of the location, construction, improvement, landscaping, maintenance or repair of any public road or highway that may be so located on the property herein conveyed.

Id. at 304 (quoting the release).  The Alabama Supreme Court reasoned that because the release "unambiguously" released the defendants "as to specific things occurring 'on the property herein conveyed,'" and "[n]one of Foreman's claims relate[d] to things occurring "on the property herein conveyed," but instead resulted from "things [Foreman alleged] ha[d] occurred on property other than that conveyed by her," the release had "no bearing on the plaintiff's claims."  Id.

By contrast, and as noted above, the Release signed by Plaintiffs in this case includes "*all*

14

. . . damages resulting from the construction of [SESH's] proposed pipeline and appurtenances." (Doc. 18-2, Exh. 4; Release) (emphasis added).  As a result, Defendant is not only exempt from liability for specific activities occurring on the easement Plaintiffs conveyed to Defendant, but is exempt from all of the damages Plaintiffs claim.  <u>Foreman</u>, in which the release was limited to specific acts on specific property, is inapposite to the case at bar.

Plaintiffs' argument that the Release and Easement had "nothing to do with conduct subsequent to the date of the release on properties outside the area of the Schultz property" is also a losing one.  Under Alabama law, "future damages may be released if such is the intent of the parties." <u>Jehle-Slauson Const. Co.</u>, 435 So.2d at 720 (citing <u>W.J. Perryman & Co. v. Penn Mutual Fire Insurance Co.</u>, 324 F.2d 791, 793 (5th Cir.1963); <u>see also</u> <u>Sheridan v. Bd. of Water and Sewer Commm'rs</u>, 764 So.2d 526 (Ala. 1999) (local residents signed a release in satisfaction of claims filed against the sewer board after raw sewage backed up into the plaintiffs' houses; similar damages occurring after the settlement but before a cut-off date specified in the release, were barred by the release)).  Indeed, a  party wishing to limit a release to present or past damages is well advised to make certain the release expressly states as much.  <u>See id.</u> ( "If the parties had intended to limit the release to prior contract litigation, they could have specifically stated their intention in the release."); <u>see also</u> <u>Alabama Power Co. v. Blount Bros. Corp.</u>, 445 So. 2d at 251–53.  The Release in this case states that Plaintiffs received $10,900.00 from Defendant "in full payment and settlement of *all* claims and damages of every kind whatsoever, present and *future*." (Doc. 13-2) (emphasis added). Like the word "all," the word "future" is unambiguous.  The Release relieves Defendant from liability for all claims existing on January 24, 2008, the date Plaintiffs executed it, as well as all claims resulting thereafter from the construction of its pipeline, including the set of claims before

15

this Court.

Finally, Plaintiffs repeatedly assert that "SESH has failed and refused through the date of this filing to conform to the terms of the Advance Damage Release in reference to the installation of culvert, fencing, and gating." (Doc. 18-2, Exh. 5; Pls' Opp. Br.).  Without explaining why such allegations are relevant to their claims, Plaintiffs imply that because SESH has allegedly failed to perform their obligations under the Release, Defendant is ill-situated to argue that the Release bars Plaintiffs' claims.  (Doc. 18-2, Exh. 5; Pls' Opp. Br.).

These arguments sound in equity, but the Court is unaware of any equitable argument available to Plaintiffs.  Plaintiff's insistence that Defendant cannot rely upon convenants made by Plaintiffs in the Release because SESH has failed to hold up its end of the bargain amounts to an "unclean hands" argument.  The doctrine of unclean hands dictates that "equity will not aid one in extracting himself or herself from hurtful consequences when his or her acts are reprehensible and directly connected with the subject matter of the litigation." Owens v. Owens, 201 So.2d 396, 398-99 (Ala. 1967).  Even assuming Plaintiffs' allegations are true, however, this Court cannot apply the unclean hands rule against SESH, because the doctrine does not apply "to a defendant not voluntarily seeking relief in equity and merely brought there at the suit of another."  C.J.S. *Equity* § 118 (2009); accord Sterling Oil of Oklahoma, Inc. v. Pack, 287 So. 2d 847, 863 (Ala. 1973) (citing Malone v. State ex rel. Gallion, 234 So.2d 32, 35 (Ala. 1970) (the "rule that he who comes into equity must come with clean hands applies as well to a defendant who seeks affirmative relief as to a plaintiff")).

Alternatively, as Defendant points out, Plaintiffs could be understood as arguing for rescission of the Release.  A rescission claim, however, does not afford Plaintiffs any more relief

16

than an unclean hands argument.  The Schultzes have neither repaid nor offered to repay the

$10,900 Defendants paid them as consideration for the release (Doc. 20; Def.'s Reply Br.; Doc.

21-2, Bartolazzi Aff. ¶ 8), and

> a releasor cannot repudiate or rescind a release which has been
> executed without restoring what he has received under such release.
> Rescission must be in toto and (1) acted upon within a reasonable
> time after discovery of the facts giving the right of rescission; (2)
> placing the parties in like position, or so near in like position as the
> circumstances of the case will permit; and (3) unless this primary
> duty is excused for reasons recognized by law.

Gilbert v. Wilson, 188 So. 260, 263 (1939); see also C.J.S. *Release* § 39 ("A person who

executes a release and afterward seeks to avoid its effect on any ground which will entitle him or

her to avoid it generally must first restore the status quo by restoring, tendering, or offering to

restore what he or she has received in return for the release.").

## III.  Conclusion

Based upon the foregoing, the Defendant's Motion for Summary Judgment (Docs. 13, 14)

is **GRANTED**, Plaintiffs' Complaint is **DISMISSED with prejudice**, Defendant's Motion to Strike

Affidavit of Donald Schultz (Doc. 22) is **GRANTED in part** and **DENIED as moot in part**, and

Defendant's Motion to Dismiss and/or Strike (Docs. 4, 25) are **DENIED as moot**.  Further, the

Clerk of Court is ordered to **TERMINATE as moot** the  Magistrate Judge's Report and

Recommendation (Doc. 25). A Judgment consistent with the terms of this Order shall issue

contemporaneously herewith.

**DONE** and **ORDERED** this the 21st day of **September, 2009.**

/s/ Kristi K. DuBose

**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**